IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALVATORE RACHUNA,<br>        Plaintiff,<br><br>vs<br><br>BEST FITNESS CORP., BEST FITNESS, and<br>B.F. OF ERIE, INC.,<br>        Defendants. | Civil Action No. 1:13-cv-365 |

## MEMORANDUM AND ORDER

Presently before the Court is a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Defendants, Best Fitness Corp., Best Fitness and B.F. of Erie, Inc., seeking to dismiss Counts I and II of the Amended Complaint (the sex discrimination and hostile work environment claims). For the reasons that follow, the motion will be granted with respect to Count I and denied with respect to Count II.

Plaintiff, Salvatore Rachuna, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA), alleging that Defendants, Best Fitness Corp., Best Fitness and/or B.F. of Erie, Inc.,[1] discriminated against him on the basis of his sex (male) by tolerating sexual harassment, created or tolerated a hostile working environment and retaliated against him for complaining about discrimination when it terminated him from his position as a Fitness Specialist on September 9, 2012.

Facts

Defendants hired Plaintiff on April 18, 2008, as a personal trainer in its Tonawanda, New

---

[1] Defendants indicate that the company's actual name is B.F. of Erie, Inc. (ECF No. 15 at 1), although they have not changed the captions of their documents to reflect that Plaintiff added B.F. of Erie as a defendant when he filed the Amended Complaint.

York location. (Am. Compl. ¶ 13.)[2] On or about September 1, 2008, Plaintiff was promoted to Fitness Director and relocated to the Erie, Pennsylvania location. Plaintiff was again promoted to Personal Training Sales Director and Fitness Director and relocated back to the Tonawanda location. In December 2011, Plaintiff was asked to move back to Erie and serve as the Operations Manager and Personal Training Sales Director. He continued as Operations Manager of the Erie location until April 2012, when he was asked to return to the Fitness Specialist position. (Am. Compl. ¶¶ 14-17.)

As a Fitness Specialist, Plaintiff was responsible for personal training sales and personal training. He alleges that he was asked to accept the Fitness Specialist position to boost sales, because sales in Erie were low and he was known for his exceptional sales building skills and creativity. (Am. Compl. ¶¶ 18-19.)

In February 2012, Eric Taylor was hired as the Membership Manager at the Erie location. As Membership Manger, Taylor oversaw Plaintiff's position in a supervisory role. Plaintiff alleges that, during day-to-day operations and at frequent meetings, Taylor would often make lewd, inappropriate and unwelcome sexual remarks directed to Plaintiff about various health club members and employees. (Am. Compl. ¶¶ 20-22.)

Taylor spoke and acted in a sexually loose and promiscuous manner, often making sexually advancing comments about members and employees. Plaintiff alleges that Taylor had an expectation that, because he was male, he would fit the same "male" gender stereotype of being sexually loose, promiscuous and predatory. (Am. Compl. ¶¶ 23-24.)

Specifically, Plaintiff cites the following examples of Taylor's behavior:

a. While Plaintiff was standing at the front desk in the entrance way of the gym, during business hours, Mr. Taylor commented to Plaintiff, "See that guy right

---

[2] ECF No. 12.

there? He has the biggest cock I have ever seen. His hog is fucking huge." Mr. Taylor then described in details that were repulsive to Plaintiff what his life would be like if his penis were that big and what he would do with it.

b. At a work fundraising function, Mr. Taylor made a sexual advance on club member, Katie Hersch, slapping Ms. Hersch on the butt and asking her to go home with him that night. During this advance, Mr. Taylor told Ms. Hersch that "one time on his tongue and she would be begging for more."

c. As Plaintiff and other employees started a managers' meeting, Mr. Taylor commented to the group that he had just seen the smallest penis in his life in the locker room.

d. On another occasion, Mr. Taylor in front of Plaintiff asked another employee if she had a good birthday on the previous day and if her husband had "given it to her real good" for her birthday.

e. Mr. Taylor made frequent, continuous comments to Plaintiff about what the sex between another employee, who was a close friend of Plaintiff's and her husband "must be like" and how Mr. Taylor would "love to get in on the action of those two."

f. Mr. Taylor made a comment to Plaintiff about a 14-year-old member about how big his feet were and that he "must be really hung."

g. One day, Mr. Taylor announced that one of the male managers at a Management Retreat had gone skinny dipping and he felt sorry for him because "he had a small penis."

h. Mr. Taylor made frequent and continuous sexual comments about underage girls in front of Plaintiff and other management members. On one occasion, Mr. Taylor was talking about a young girl's "ass." Another staff member told Mr. Taylor that sexual jokes about underage girls are intolerable, as the staff member had a daughter the same age as the girl that Mr. Taylor was commenting on. The conversation turned into a heated argument in which Plaintiff was forced to intervene so as not to further disrupt the membership or workplace.

(Am. Compl. ¶ 25.)

Plaintiff alleges that his failure to respond favorably to Taylor in conformity with this "male" gender stereotype only increased Taylor's tendencies to make lewd, hostile and unwelcome actions and comments. He indicates that these comments and actions humiliated and embarrassed him in front of other employees and members, causing him to dread going to work

3

and being unable to effectively conduct his day-to-day business. He also states that Taylor's comments and actions caused physical and verbal altercations and disruptions in the workplace, which caused extreme difficulty for him to effectively perform his job duties. (Am. Compl. ¶¶ 27-29.)

Plaintiff states that he frequently reported these inappropriate, uncomfortable comments to his direct supervisor, Defendants' Corporate Vice President of Personal Training, Karli Taylor, who was Taylor's wife. In or around March 2012, Plaintiff attended a managers' meeting with Mrs. Taylor and advised her of his complaints regarding Taylor's inappropriate, sexual, hostile behavior. At this meeting, Mrs. Taylor responded by advising the managers that they needed to get along as a team and unite to "push back" against Taylor to keep him under control and managed. Plaintiff alleges that, despite the fact that he repeatedly reported the incidences to Mrs. Taylor, she took no formal action or response; instead, she advised Plaintiff on how to "handle" Taylor when problems arose. (Am. Compl. ¶¶ 30-34.)

Finally, on or about July 30, 2012, after a brief conversation between Plaintiff and Taylor, Taylor made an inappropriate remark asking Plaintiff if he had "fucked anyone lately?" Plaintiff looked at Taylor shocked and embarrassed and said "no, why would you ask that?" Taylor furthered the harassing dialogue by stating "come on [Plaintiff], there are almost 6,000 members here, you gotta get it in!" Thereafter, Plaintiff left the room humiliated. (Am. Compl. ¶¶ 35-38.)

Plaintiff alleges that, on or about August 2, 2012, he reported the incident to Defendants' Chief Executive Officer, David Dos Santos. Dos Santos replied "why would he ask you that [Plaintiff]? Did you fuck anyone he knows, I don't see why he would ask you that if he didn't think you did. I just don't see [Mr. Taylor] asking that if he didn't feel you did." Dos Santos

took no further action after receiving the report. (Am. Compl. ¶¶ 39-41.)

On August 16, 2012, Plaintiff sent an email to Human Resources Director, Linda Tsantoulis, reporting the incident that had transpired with Taylor and Dos Santos. Ms. Tsantoulis responded advising Plaintiff that she would take the charge seriously and commence an investigation. Several days later, Tsantoulis followed up with Plaintiff and said that she would continue to check in with him to make sure everything was "okay" and that he had no other issues in the future. (Am. Compl. ¶¶ 42-44.)

On September 9, 2012, Plaintiff's employment with Defendants was terminated. Plaintiff avers that the inappropriate, lewd and unwelcome sexual comments from Defendants' management toward him constitute harassment based on his sex. Plaintiff further avers that his discharge from employment was taken in retaliation for his reporting of the unlawful, unwelcome comments. He alleges that Defendants caused and/or knowingly permitted the inappropriate, unwelcome, lewd comments of its corporate and management staff to continue directly toward and before him and that Defendants' corporate and management staff were aware of the repeated, unwelcome, lewd comments being directed at and before him. (Am. Compl. ¶¶ 45-49.)

Procedural History

Plaintiff filed this action on December 19, 2013. On February 24, 2014, Defendants filed a partial motion to dismiss Counts I and II of the Complaint (ECF No. 5). In response, Plaintiff filed an Amended Complaint on March 17, 2014 (ECF No. 12). Federal question jurisdiction is based on the Title VII claims, 42 U.S.C. § 2000e-5(f); 28 U.S.C. § 1331; and the Court has supplemental (Plaintiff uses the outdated term "pendent") jurisdiction over the PHRA claims, 28

5

U.S.C. § 1367(a).[3] Count I alleges that he was subjected to discrimination in the form of same-sex harassment and because Taylor believed he did not conform to the stereotype of a heterosexual male, in violation of Title VII. Count II alleges that he was subjected to a sexually hostile work environment in violation of Title VII and the PHRA. Count III alleges that he was retaliated against for complaining about harassment in the workplace, in violation of Title VII.

Defendants filed a partial motion to dismiss Counts I and II of the Amended Complaint on April 2, 2014 (ECF No. 15). Plaintiff filed a brief in opposition on April 30, 2014 (ECF No. 19).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are

---

[3] Plaintiff also cites 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act), 28 U.S.C. § 1343 (civil rights claims), 29 U.S.C. § 217 (FLSA claims), and 29 U.S.C. § 1132 (ERISA claims). (Am. Compl. ¶ 5.) In addition, he alleges an amount in controversy exceeding $75,000.00. (Am. Compl. ¶ 8). These citations and allegations are not relevant to this case.

6

insufficient. Id. at 679.  The Court of Appeals recently summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Defendants argue that: 1) Count I (sexual discrimination) is duplicative of Count II (hostile work environment); 2) the allegations do not meet any of the three narrow scenarios for same-sex harassment under Title VII; and 3) the allegations do not support a finding that Plaintiff was subjected to "severe and pervasive" conduct.

Plaintiff responds that: 1) he has alleged that he was subjected to same-sex harassment on the basis that he did not conform to Taylor's stereotype of a fellow male co-worker who would make sexually loose, promiscuous and predatory comments in the workplace; and 2) he has alleged that he was subjected to severe and pervasive harassment sufficient to create an objectively hostile work environment.

### Duplication of Claims

Defendants argue that Count I (sexual discrimination) should be dismissed because it is unnecessarily duplicative of Count II (hostile work environment).  They note that Count I alleges that Plaintiff "was subjected to sex discrimination as a result of the sexual harassment from Defendant's [sic] management and corporate staff."  (Am. Compl. ¶ 52.)  However, the Amended Complaint already contains a hostile work environment claim in Count II.  Plaintiff

7

has not responded to this argument.

Because the Amended Complaint alleges discrimination in the form of a sexually hostile work environment, the claim in Count I is duplicative of the claim asserted in Count II.[4] Therefore, the motion to dismiss Count I as duplicative will be granted.

Same-Sex Harassment

Title VII prohibits discrimination "because of sex." 42 U.S.C. § 2000e-2(a)(1). The PHRA contains a similar statement. 43 P.S. § 955(a). "It is clear, however, that Title VII does not prohibit discrimination based on sexual orientation." Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001) (citations omitted). In Bibby, the Court of Appeals discussed a Supreme Court case, Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998), which "unanimously held that Title VII does provide a cause of action for same-sex sexual harassment." Id. at 262. Specifically, the court stated that:

> There are several situations in which same-sex harassment can be seen as discrimination because of sex. The first is where there is evidence that the harasser sexually desires the victim. [Oncale, 523 U.S.] at 80, 118 S.Ct. 998. Thus, when a gay or lesbian supervisor treats a same-sex subordinate in a way that is sexually charged, it is reasonable to infer that the harasser acts as he or she does because of the victim's sex.
>
> Same-sex harassment might also be found where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace. Id. (stating that same-sex sexual harassment could be found "if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace"). For example, a woman chief executive officer of an airline might believe that women should not be pilots and might treat women pilots with hostility amounting to harassment. Similarly, a male doctor might believe that men should not be employed as nurses, leading him to make harassing statements to a male nurse with whom he works. In each of these hypothetical situations, it would be easy to conclude that the harassment

---

[4] It is possible, in appropriate circumstances, for a male employee to allege that his discharge constituted "reverse discrimination," see Medcalf v. Trustees of University of Pennsylvania, 71 F. App'x 924, 927 (3d Cir. 2003), but Plaintiff has not made such allegations here.

8

was caused by a general hostility to the presence of one sex in the workplace or in a particular work function, and, therefore, amounted to discrimination because of sex.

Further, although it is less clear, a plaintiff may be able to prove that same-sex harassment was discrimination because of sex by presenting evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender.

Id. at 262-63 (citations and footnote omitted). However, the court concluded that the plaintiff met none of these three scenarios because his allegations made clear that he was discriminated against because of his sexual orientation (he was gay and was called derogatory names and attacked on this basis) and thus his claims were dismissed. However, in Prowel v. Wise Business Forms, Inc., 579 F.3d 285 (3d Cir. 2009), the court held that an effeminate gay man submitted evidence from which it could be inferred that he was discriminated against either based on his sexual orientation—which is not actionable—or based on gender stereotyping—which is actionable—and the jury would have to hear the evidence and sort it out.

In Bibby, the court held that "a plaintiff may be able to prove that same-sex harassment was discrimination because of sex by presenting evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender." 260 F.3d at 262-63. This statement clearly contemplates a fully-developed record and a motion for summary judgment or trial, not a motion to dismiss a complaint. Defendants have not cited a single case that granted a motion to dismiss under these circumstances. This is not surprising because, as the court noted in Bibby: "The question of how to prove that same-sex harassment is because of sex is not an easy one to answer." Id. at 262.

Defendants argue that, although Plaintiff alleges that Taylor's actions were motivated by a belief that he did not conform to the stereotype of a heterosexual male, his allegations are insufficient because he has not alleged that he was being harassed for being effeminate. Rather,

9

they argue that his claims are essentially that he was offended by Taylor discussing sex-related topics with him, such as asking him about his personal sex life and encouraging him to have sex more often. However, Defendants cite no authority in support of this argument, only cases in which courts permitted claims to proceed when male plaintiffs proffered evidence that they were harassed for being effeminate and/or for exhibiting characteristics of the opposite gender. This does not mean that these are the only circumstances that can support a claim of same-sex harassment based on gender stereotyping.

The court in <u>Bibby</u> observed that the plaintiff "did not claim that he was harassed because he failed to comply with societal stereotypes of how men ought to appear or behave…." 260 F.3d at 264. <u>See also</u> <u>Vickers v. Fairfield Med. Ctr.</u>, 453 F.3d 757, 764 (6th Cir. 2006) (male private police officer who was subjected to taunts and insults from male co-workers and supervisor who thought he was a homosexual failed to state a claim for gender stereotyping because he failed to allege that he did not conform to traditional gender stereotypes in any observable way at work); <u>but see</u> <u>id.</u> at 768-70 (Lawson, J., dissenting) (observing that some of the incidents did convey that the harassers thought the plaintiff was not "masculine" enough, such as when they teased him for befriending a gay man who had filed a sexual misconduct complaint against a male doctor and when they taunted him, claiming he was "in a bad mood" and pushing a sanitary napkin in his face). Plaintiff in this case, however, is making those very claims. He has not alleged that he is homosexual or that Taylor perceived him to be. Rather, he has alleged that his refusal to conform to a gender stereotype by participating in Taylor's behavior led to further incidents of Taylor's behavior.

Defendants further argue that Plaintiff's allegations are undermined by the fact that he also alleges that Taylor acted inappropriately and made similar comments to female employees.

10

Thus, they contend that Taylor could not have been discriminating against Plaintiff "based on" his sex. Some courts have "not recognize[d] Title VII sexual harassment claims in the case of the 'equal opportunity' harasser." Holman v. Indiana, 211 F.3d 399, 403 (7th Cir. 2000) (married couple were both subjected to sexual propositions by the same male supervisor, and court concluded that he was therefore not discriminating between them). See also Hubbell v. World Kitchen, LLC, 688 F. Supp. 2d 401, 420 (W.D. Pa. 2010) (Conti, J.) (supervisor yelled at both men and women and thus did not discriminate between them); Connell v. Principi, 2007 WL 3274185 (W.D. Pa. Nov. 5, 2007) (Cohill, J.), aff'd mem., 318 F. App'x 75 (3d Cir. 2009) (male employees could not maintain sexual harassment claim against female co-worker who yelled at and physically threatened them, even when some incidents had a sexual component to them, because she treated female co-workers in the same way).

However, Plaintiff has not alleged that Taylor was sexually propositioning both men and women or that he was treating both men and women badly. Rather, he has alleged that Taylor's comments and behavior were heterosexual in nature but that he expected men, such as Plaintiff, to join in the lewd, promiscuous and predatory talk.[5] Plaintiff did not discuss his sex life, nor did he inappropriately touch or hit on employees or discuss club members in a sexual and vulgar manner. He did not agree or join in Taylor's discussion of an underage girl's body, and he intervened to break up an argument between Taylor and another employee who objected to Taylor's comment about a young girl's "ass." Plaintiff suggests that this act may have projected to Taylor that he was a more sensitive type of male (showing his "feminine side") and that such

---

[5] Remarkably, Defendants note that Plaintiff's former co-worker, Jennifer Silber, has also filed a complaint at Civil Action No. 1:13-cv-350, in which she alleges that Taylor subjected her to sexual harassment. (ECF No. 16 at 6 n.2.) Far from demonstrating that Taylor was an "equal opportunity harasser," this information supports Plaintiff's claim that Taylor talked about sexual matters and expected men to join in his behavior.

11

action only served to increase the severity and frequency of Taylor's actions. He has also alleged that, when he complained to the Chief Executive Officer, Dos Santos responded with more male stereotyping, asking if Plaintiff had had sex with someone Taylor knew instead of acknowledging the inappropriateness of Taylor's comments.

When the record has been developed, the parties can pursue this issue further. However, it cannot be resolved in the context of a motion to dismiss. Therefore, this argument is rejected.[6]

### Severe or Pervasive Harassment

The United States Supreme Court has held that a plaintiff may establish a Title VII violation if he can show that discrimination based on sex created a hostile or abusive working environment. Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998). The Court of Appeals has held that a plaintiff must demonstrate that:

> (1) []he suffered intentional discrimination because of [his sex]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citations and footnotes omitted). Defendants incorporate their brief in support of the first partial motion to dismiss (ECF No. 16 at 4 n.1) to argue that Plaintiff cannot establish that the discrimination was severe or pervasive[7] because he referred to only two instances. However, Defendants have not accurately recited the allegations of the Complaint, which stated that, "during day-to-day operations and at frequent meetings, Mr.

---

[6] The Court will not address Defendants' outrageous argument that, because Taylor allegedly told Plaintiff "you gotta get it in!" he was "attempting to encourage and support Plaintiff, not demean or tease him." (ECF No. 16 at 7.) The relevant inquiry is whether the victim indicated that the sexual remarks were unwelcome. Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986). Plaintiff has alleged that he indicated to Taylor that his comments were unwelcome.
[7] Defendants' actual argument is that Plaintiff has not alleged harassment that was "severe and pervasive" but in Jensen, the court clarified that, pursuant to controlling Supreme Court precedent, the standard is severe or pervasive. Id. at 449 n.3.

12

Taylor would often make lewd, inappropriate and unwelcome sexual remarks directed at Plaintiff and to Plaintiff about various health club members and employees." (Compl. ¶ 21.) More importantly, the Amended Complaint—which is the operative document in this case—lists a number of additional incidents. (Am. Compl. ¶ 25.)

The cases that Defendant cites were decided on motions for summary judgment, not motions to dismiss. The Supreme Court has held that "the prima facie case under McDonnell Douglas … is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). The Supreme Court cited Swierkiewicz approvingly in Twombly, 550 U.S. at 555-56, and rejected the contention that it "ran counter" to Twombly's plausibility standard. In re Insurance Brokerage Antitrust Litig., 618 F.3d 300, 319 n.17 (3d Cir. 2010). Thus, Plaintiff does not have to meet the prima facie case standard of McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973), in order to survive a motion to dismiss for failure to state a claim upon which relief may be granted.

For these reasons, the partial motion to dismiss submitted on behalf of the defendants (ECF No. 15) will be granted with respect to Count I and denied with respect to Count II.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SALVATORE RACHUNA, )
        Plaintiff, )
)
vs ) Civil Action No. 1:13-cv-365
)
BEST FITNESS CORP., BEST FITNESS, and )
B.F. OF ERIE, INC., )
        Defendants. )

ORDER

AND NOW, this 5th day of May, 2014,

IT IS HEREBY ORDERED that the partial motion to dismiss the Amended Complaint filed by Defendants (ECF No. 15) is granted with respect to Count I and denied with respect to Count II.

IT IS FURTHER ORDERED that Defendants file an answer to the Amended Complaint by May 19, 2014.

                                          s/Robert C. Mitchell_____
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge